# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# HATTIESBURG DIVISION

JOHN ADCOCK                                                                                                          PLAINTIFF

VERSUS                                             CIVIL ACTION NO. 2:08cv263KS-MTP

SOUTH AUSTIN MARINE, INC.                                                DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion for Summary Judgment **[#14]** filed on behalf of the defendant and on a Cross-Motion for Summary Judgment **[#19]** filed on behalf of the plaintiff and a Motion to Strike **[#21]** filed on behalf of the defendant. The court, having reviewed the motions, the responses, the briefs of counsel, the authorities cited, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that the defendant's motion for summary judgment is well taken and should be granted and the remaining motions denied. The court specifically finds as follows:

## FACTUAL BACKGROUND AND FINDINGS

The plaintiff, John Adcock, filed this lawsuit on October 7, 2008, alleging claims of fraud and negligence against South Austin Marine.[1] This case centers around Adcock's purchase of a boat from South Austin Marine in Austin, Texas. On April 4,

---

[1] After discovery, and in the face of the summary judgment motion, the plaintiff has conceded that he has no basis for a fraud claim, thus entitling the defendant to judgment on it.

2008, Adcock and his father, Jesse Adcock ("Jesse") contacted South Austin Marine via telephone in order to purchase a Supra boat for Adcock to use for recreational wakeboarding. Adcock and Jesse spoke with Greg Parker ("Parker"), a salesman for South Austin Marine. At the time they called South Austin Marine, neither Adcock nor Jesse were aware that Supra makes two boats, the Supra Sunsport and the Supra Launch, that the defendant claims are almost identical. The main differences in the two boats are the seating arrangements and the standard options on each boat. *See* Exhibit A, John Adcock's Dep. at pp. 43-44; Exhibit C, Greg Parker's Dep. at pp. 15-16; Exhibit D, Dan Miller's Expert Report; Exhibit E, Kenneth Black's Expert Report.

According to Adcock's testimony, he wanted a blue 22 foot Supra boat with a wakeboard tower, board racks and a ballast system. At the time of Adcock's call, South Austin Marine had both a Supra Sunsport and a Supra Launch in stock, and both boats had all of the features that Adcock wanted. Parker wrote up a purchase order for the Supra Launch and faxed it to Adcock. Adcock wanted to pick up the boat the following day so Parker faxed Adcock the paperwork for a 22 foot blue Supra Launch and Jesse wired South Austin Marine the purchase money funds for the boat in the amount of $48,995.00.

On April 5, 2008, Adcock, Jesse and his wife, Janet, arrived in Austin, Texas, at the South Austin Marine dealership to demo the boat and take delivery of it. When they arrived, a blue 22 foot Sunsport, rather than a blue 22 foot Launch, was outside and ready to be inspected and taken for a test drive. Parker hooked the Sunsport to his truck and hauled it to the lake for a test drive with Adcock and his family. Parker has testified that he didn't recall at that point that he had previously discussed a Supra

Launch with Adcock rather than the Sunsport. The Adcocks spent between two and three hours either at the South Austin Marine dealership inspecting the Sunsport or test driving it on the lake.

At the lake, Parker showed Adcock all of the features of the boat and demonstrated how to work the ballast system. Adcock indicated that he was satisfied with the boat at that time. The Supra Sunsport which Adcock and his family inspected and test drove has an open bow with "walk-thru" seating. In fact, Janet mentioned during the boat demonstration that she liked the walk-thru seating feature of the boat. This seating arrangement is not available on the Supra Launch that Adcock thought he was purchasing.

After the test drive and inspection, Adcock signed the Customer Delivery Inspection form for the Supra Sunsport that he had just finished test driving. The Customer Delivery Inspection form that Adcock signed says "Supra Sunsport" at the top and was for the Supra Sunsport that he test drove and inspected. Adcock then brought the boat back to Mississippi and alleges that he registered the boat and paid Mississippi sales taxes on it in the amount of $3,494.00. He also alleges that he purchased insurance on it for a premium of at least $1,000.00.[2] Unknown to all parties at this time, the paperwork for the boat contained the certificate of origin and serial number for the Supra Launch he thought he had purchased instead of the Supra Sunsport he had actually taken possession of.

About three months after Adcock purchased the boat from South Austin Marine,

---

[2] There is no proof of the sales taxes or insurance payments in the record other than the statements of the plaintiff.

Parker was in the process of selling a blue 22 foot Supra Sunsport and could not find the paperwork for it. During the search for the missing paperwork, he realized that there may have been an error with the paperwork for the boat that Adcock purchased. Parker immediately called Adcock regarding the paperwork and discussed sending Adcock the proper title to the Supra Sunsport in his possession in exchange for the title to the Supra Launch.

Parker has testified that at that time he understood that Adcock was happy with the Sunsport and that he was willing to exchange the titles to the boats. It is uncontradicted that Adcock never voiced any complaints or dissatisfaction about the Sunsport prior to the contact from Parker. Some time later, however, Adcock apparently changed his mind and asked for the delivery of the Supra Launch or for the purchase price of the boat back and to be reimbursed for the sales taxes and insurance he had paid on the boat. Adcock alleges that merely swapping paperwork was not a viable option because he had already registered and paid sales tax on the Sunsport and that these payments were not refundable and would have to be paid again on the Launch. The plaintiff alleges that the defendant's undisputed tender of the wrong boat has caused him to incur damages, including the purchase price of the boat, the loss of use of the boat for two seasons[3], the sales tax paid and the insurance paid.

The evidence indicates that the dealer cost of a Supra Sunsport equipped with the wakeboarding package is approximately $400 more than the dealer cost of a Supra Launch. Further, based on the industry NADA guide, a Supra Sunsport equipped with

---

[3] Once again, the record is devoid of any proof that Adcock was deprived of use of the boat other than his self-serving statements to that effect.

the wakeboarding package sells for a higher price than a Supra Launch. It is uncontradicted that South Austin Marine actually made less money by selling the higher priced Supra Sunsport to Adcock for the price of the lower priced Supra Launch.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and

the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992). In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John*, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented,

the nonmoving party must rebut with "significant probative" evidence.  *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact."  *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda.  The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P.  *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'"  *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## **ANALYSIS**

The defendant argues that Adcock's negligence claims are barred by the economic loss doctrine.  This is a diversity case and this court is *Erie* bound to follow the decisions of the Mississippi Supreme Court on issues of substantive law.  *See Erie Railroad Co. v Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).  If there is no controlling precedent from that Court, federal courts sitting in diversity are to make an *Erie* guess as to what the Mississippi Supreme Court would decide if the issue were

presented to that Court.  The Mississippi Supreme Court has not ruled on the precise question of whether a case regarding the sale of goods governed by the Uniform Commercial Code ("UCC"), as codified in Mississippi, can be brought under a theory of negligence (tort), in which the plaintiffs seek only damages that are economic in nature where there is no personal injury or property damage.

However, what is clear is that the overwhelming weight of authority holds that there can be no recovery in tort for a defective product under either strict liability or negligence in a similar situation.  *See Seely v. White Motor Co.*, 63 Cal.2d 9, 403 P.2d 145, 45 Cal.Rptr. 17 (1965) (leading case), and *173 *Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.*, 626 F.2d 280, 287 n. 13 (3rd Cir.1980) (citing cases).  *See also East Mississippi Electric Power Assoc. v. Porcelain Products Co.*, 729 F.Supp. 512 (S.D.Miss.1990); *Lee v. General Motors Corp.* 950 F.Supp. 170 (S.D.Miss.,1996)(this court made and *Erie* guess that the Mississippi Court would follow the economic loss doctrine in defective product cases and was cited with approval in *State Farm Mut. Auto. Ins. Co. v. Ford Motor Corp.*, 736 So.2d 384 (Miss. App. 1999)(holding that "[a]lthough the economic loss doctrine prohibits recovery in tort for damage to the product itself, that does not mean that consumers who suffer loss or damage to only the product itself are without recourse. Contract law and the law of warranty are well suited to handle controversies in which commercial purchases do not live up to the expectations of the consumer.")).

The defendant is asking this court to once again make an *Erie* prediction and find that the Mississippi Court would extend the economic loss doctrine to sales transactions under the UCC where there is no personal injury or property damage.  The plaintiff has

alleged no personal injury or property damage in this action.  He is only seeking economic losses as outlined above.

One federal court in this district has already observed that the UCC is generally regarded as the exclusive source for ascertaining a seller's liability for damages in claims based on economic loss that are not attributable to personal injury or property damages.  See *Progressive Insurance Co. v. Monaco Coach Corp.*, 2006 WL 839520 at *3 (S.D. Miss. 2006)(citing W. Prosser and W. Keeton, The Law of Torts § 95).  Further, other jurisdictions which have addressed the economic loss doctrine as it applies to cases regarding the sale of goods have held that plaintiffs cannot recover for economic loss resulting from a contract under a tort theory.  *See Rotorex Co., Inc., v. Kingsbury Corp.*, 42 F.Supp.2nd 563 (D. Md. 1999)(a party who enters into a contract for the sale of goods may not recover in tort for purely economic losses arising out of the quality or performance of those goods); *In re Lone Star Indus. Inc., Concrete R.R. Cross Ties Litigation*, 776 F.Supp. 206, 221 (D.Md. 1991); *Morris v. Osmose Wood Preserving*, 667 A.2nd 624 (Md. 1995).

Additionally, most courts that have addressed the issue have held that the only remedy for receiving defective or non-conforming goods is under the Uniform Commercial Code.  *See Spring Motors Distr., Inc., v. Ford Motor Co.*, 489 A.2nd 660, 663 (N.J. 1985); *Vitolo v. Dow Corning Corp.*, 234 A.D.2nd 361 (N.Y. App. Div. 1996); *McDowell v. Atco Rubber Prods.*, 221 A.D.2nd 876 (N.Y. App. Div. 1995); *Sensenbrenner v. Rust, Orling, and Neale*, 374 S.E.2nd 55, 58 (Va. 1988).

The plaintiff's only rebuttal to the defendant's argument is that the economic loss doctrine has only been applied in defective product cases.  That is not strictly true as

demonstrated by the above cited UCC cases.  Further, the plaintiff cites no authority to support his use of a negligence cause of action as a remedy for the alleged breach of a sales transaction under the UCC.  Indeed, the plaintiff has not even pled a cause of action sounding in breach of the UCC or contract.  The main relief sought by the plaintiff is for rescission of the sales transaction, which is a viable remedy in a UCC or contract claim.  But, as stated, he has pled neither.

There has been no case cited and the court has been unable to find any which allows a cause of action for only economic damages to proceed as a tort in purely negligence without personal injury or property damage.  The cases cited above lead the court to conclude that there are at least three principle reasons for not allowing recovery in tort when only economic damages are sought to be recovered.  First, tort law would subsume contract law, secondly the seller's exposure would be too greatly expanded, and thirdly the increased costs to the ultimate consumer would be too great.  These conclusions are analogous to the reasoning relied upon by Judge Lee of this court in *East Mississippi* and by the U.S. Supreme Court in *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986)( holding that if the development of causes of actions where people need more protection from dangerous products than is afforded by the law of warranty are allowed to progress too far, "contract law would drown in a sea of tort".).  This court thus concludes that the Mississippi Supreme Court, if called upon to decide this issue, would conclude that the plaintiff in this case cannot pursue a remedy under theories of negligence in tort when he seeks damages that are solely economic in nature without any personal injury or property damage.  The defendant is therefore entitled to summary judgment.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment **[#14]** filed on behalf of the defendant is granted and the Cross-Motion for Summary Judgment **[#19]** filed on behalf of the plaintiff is denied and the Motion to Strike **[#21]** filed on behalf of the defendant is denied as moot and that any other pending motion is denied as moot. A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 30th day of October, 2009.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE